Lawrence BROWN, Plaintiff,

v.

Venida PERKINS, Defendant.

No. 88 C 9944.

United States District Court,
N.D. Illinois, E.D.

Feb. 17, 1989.

Peter M. Rosenthal, Rosenthal, Murphey, Coblentz & Janega, Chicago, Ill., for plaintiff.

Patrick A. Lucansky, Richard T. Wimmer, Thomas P. Bayer, Klein, Thorpe & Jenkins, Chicago, Ill., for defendant.

MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

In a general election held in April 1987, plaintiff Lawrence Brown was elected to a four-year term as trustee for the Sixth District of the Village of Maywood. On May 1, 1987 he took office, expecting to serve until April 30, 1991.

The next year, following a petition drive by the citizens of Maywood, a referendum was placed on the March 15, 1988 primary ballot.

Shall the manner of selection and terms of all Village Trustees of the Village of Maywood be reduced from four to two years with all such trustees standing for election at the April, 1989 Consolidated Election and every two years thereafter?

The referendum passed.

As the Local Election Official of the Village of Maywood, defendant Venida Perkins is required by Illinois law to certify to the County Clerk of Cook County the offices for which elections shall be held at the April, 1989 general election. Plaintiff has

brought this action under 42 U.S.C. § 1983 to prevent her from certifying that the office of Sixth District trustee shall be placed on the ballot. Defendant has moved to dismiss on the grounds that the complaint fails to state a claim upon which relief could be granted.

## DISCUSSION

In ruling on this motion, this court is cognizant of the fact that it may dismiss the complaint only if plaintiff could prove no set of facts consistent with his allegations which would entitle him to relief. That mandate is particularly important here because the facts and legal theories alleged in the complaint are sparse, and the discussions of the parties only tangentially relevant to them.

In the pleadings, plaintiff states essentially only those facts set forth above. He then alleges that, by shortening his term of office from four years to two, the referendum (and defendant's anticipated certification of his office as up for election in April 1989) deprives him of property without due process of law.

■ Defendant begins her motion to dismiss by arguing that plaintiff has not even alleged a constitutional deprivation, because he is attacking only what the defendant will do in the future yet plaintiff still has state avenues available to prevent her from doing so. But that is an overly constricted view of the pleadings. The complaint can be read as alleging that the referendum, which both sides agree *purports* to shorten plaintiff's terms, violated his constitutional rights. Because defendant's certification of its results would not be a "random and unauthorized act," plaintiff has no obligation to exhaust state law remedies before bringing a due process claim in this court. *Wilson v. Civil Town of Clayton, Indiana,* 839 F.2d 375, 378–79 (7th Cir.1988).

■ Defendant next argues that plaintiff has no property interest in his position as village trustee. Although she does not bother to cite any cases in support of this argument, she could have. In *Taylor v.*

*Beckham,* 178 U.S. 548, 576–77, 20 S.Ct. 890, 900–901, 44 L.Ed. 1187 (1900), and *Snowden v. Hughes,* 321 U.S. 1, 7, 64 S.Ct. 397, 400, 88 L.Ed. 497 (1944), the Supreme Court held that an elected political official does not have a property right in his office, and accordingly that the due process clause of the Fourteenth Amendment affords him no protection when a state (or municipality) seeks to remove him from the position. *See also Egan v. City of Aurora,* 365 U.S. 514, 81 S.Ct. 684, 5 L.Ed.2d 741 (1961). *But see Taylor v. Beckham,* 178 U.S. at 605–06, 20 S.Ct. at 1016–17 (Harlan, J., dissenting) (arguing that there is a property interest in an elected political office).

The concept of property encompassed by the Fourteenth Amendment's due process clause, however, has undergone a dramatic expansion over the past two decades, *see generally Patterson v. Portch,* 853 F.2d 1399, 1404–05 (7th Cir.1988), and it is now established that government employees not terminable "at will" have a property interest in their jobs which may only be terminated with due process of law. *E.g., Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). From this new approach to property rights, lower courts in recent years have assumed, without citing the earlier Supreme Court cases, that "an elected official who is entitled to hold an office under state law has a property interest in his office which can be taken from him only by procedures meeting the requirements of due process." *Crowe v. Lucas,* 595 F.2d 985, 993 (5th Cir.1979); *Gordon v. Leatherman,* 450 F.2d 562, 565 (5th Cir.1971).

Yet, assuming that an elected government official is entitled to constitutionally adequate procedural safeguards, the plaintiff here received them. He was not fired from his four-year job by a state (or municipal) legislature or court, he was voted out by the people of Maywood, who determined by referendum that his term of office should be only two years. A general election, with prior registration and public participation, certainly provides pre-termination notice and an opportunity to be heard, and that is precisely what federal due process requires, *see Cleveland Board*

*of Education v. Loudermill,* 470 U.S. at 543–45, 105 S.Ct. at 1493–95.

Indeed, what plaintiff really appears to be objecting to here is the fact that there was such a referendum at all. The Illinois Municipal Code provides a method by which the terms for which trustees are elected can be reduced from four years to two years, Ill.Rev.Stat. ch. 24, ¶ 3–2–9, and it appears that the referendum held in Maywood in 1988 may have violated this provision.

Even if it did, however, this fact provides plaintiff no help here. In *Clark v. Village of Arlington Heights,* 57 Ill.2d 50, 309 N.E.2d 576 (1974), the Illinois Supreme Court held that Article VII, § 6(f) of the Illinois Constitution gives home rule municipalities such as Maywood the right to alter the structure of their government as they please, even if such structural revisions violate the Municipal Code; § 6(f) specifically includes terms of office within the sorts of structural changes that may be made. Thus, it appears, the referendum to which plaintiff objects satisfied Illinois law.

Moreover, to the extent that the Illinois Municipal Code is the source of plaintiff's complaint, he is making it in the wrong place. The federal Constitution protects state and municipal employees with property interests in their positions from being deprived of their jobs without due process of law. But it does not protect them from being fired even with such process. And whereas the source of the property interest is state law, it is the federal Constitution which prescribes the necessary procedure for taking that property. Thus, even if state law provides no process for removing an incumbent, a federal court can prevent it only if the removal is done without due process. *Cf. Kasper v. Board of Election Commissioners of the City of Chicago,* 814 F.2d 332, 342 (7th Cir.1987). As noted earlier, a public election suffices on this score. *See also Gordon v. Leatherman,* 450 F.2d at 567.

The discussion could end here were it not for the fact that plaintiff has described another theory for recovery in his briefs, and one not necessarily inconsistent with the facts in his complaint. According to the plaintiff, the procedures by which the referendum was placed on the March 15 ballot were insufficient to satisfy his constitutional procedural rights.

Although his description of the facts is far from clear, it appears that the March referendum was placed on the ballot after a certain number of petitions in favor of the referendum had been presented to the county clerk's office some period of time before the date of the election. Plaintiff maintains that he never received actual notice of the petitions being filed, and was thereby deprived of the opportunity to object to them.

Even setting aside plaintiff's failure to allege these facts in his complaint, and his nearly incredible contention that he knew nothing of the proposed referendum until it was too late, this court finds no constitutional infirmity here. The methods for petitioning to place public questions on ballots, and for objecting to the petitions, is clearly set forth in the Illinois statutes and has been followed by Illinois citizens for years. *See* Illinois Election Code, ch. 46, ¶ 28–1 et seq. Although the election authorities must employ fair procedures in examining and determining the validity of the petitions and objections, *see Briscoe v. Kusper,* 435 F.2d 1046 (7th Cir.1970), plaintiff's contention that in order to satisfy due process constraints the Village had to give him personal notice of the petitions and of his right to object to them is misguided. As defendant points out, "under plaintiff's theory, every time a referendum was sought to be placed on the ballot, actual notice would have to be given to every individual who would be affected if the referendum passes." Due process in this context requires no such thing.

## CONCLUSION

Defendant's motion to dismiss is granted.